IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID RODGERS, as Special Administrator of the Estate of Edward J. Rodgers, deceased,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS DART, ET AL.,<br><br>Defendants. | Case No. 11-cv-5118<br><br>Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on several motions to dismiss filed by Defendants [60, 62, 64, and 68]. For the reasons stated below, the Court grants the motions to dismiss filed by Defendants Williamson and Oliver [62 and 64], as Plaintiff's claims against Williamson and Oliver have been resurrected by the Illinois Appellate Court and Plaintiff previously indicated that he preferred to litigate these claims in state court.[1] Thus, Defendants Williamson and Oliver are dismissed from this federal lawsuit and the claims against them may proceed in state court. The Court denies the motions to dismiss filed by Defendants Cook County and Sheriff Dart [60 and 68]. This case is set for a status hearing on April 23, 2014, at 9:00 a.m.

**I.    Background[2]**

Edward Rodgers entered the Cook County Jail on July 31, 2010, following his arrest for a misdemeanor offense on July 30, 2010. Edward,[3] who was 61 years old, had serious medical

---

[1]  The Court does not reach the merits of the arguments advanced by Defendants Williamson and Oliver.

[2]  For purposes of Defendants' motions to dismiss, the Court assumes as true all well-pleaded allegations set forth in the amended complaint. See, *e.g.*, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

needs. In addition to asthma, Edward had an implanted defibrillator and required a variety of prescription medications several times a day. When he entered the jail on July 31, Edward reported his medical needs to intake personnel. In response, intake personnel referred Edward to the Cermak Infirmary Emergency Room, which in turn referred him to Stroger Hospital. Edward arrived at Stroger on August 1, 2010, and remained there until August 2, 2010. According to Plaintiff, physicians at Stroger concluded that Edward should continue to receive the medications that he had been taking before his arrest. The physicians identified the medications—including Hydralazine—on the medical records, which were returned to Cook County Jail with Edward on August 2, 2010.

Pursuant to the policies and practices at Cook County Jail, inmates would not be provided with medication that had been prescribed at Stroger Hospital until the inmate was examined by a physician at the jail. Edward became seriously ill while at the jail and began to exhibit symptoms of heart failure. According to Plaintiff, correctional officers ignored Edward's worsening symptoms until August 5, 2010, when he was permitted to see a physician for the first time since his arrest. Defendant Sunita Williamson, M.D., examined Edward and prescribed hydroxyzine pamoate, rather than hydralazine.

On August 6, 2010, Edward began to exhibit bizarre behavior and was sent for a psychological evaluation. The evaluation was performed by Defendant Clifford Oliver, a "Mental Health Specialist II." Oliver concluded that Edward was not suffering any psychological issues but rather that his problems were medical in nature. Edward Rodgers died later that day.

---

[3] In order to avoid confusion with Plaintiff David Rodgers, Edward's son and special administrator of the estate of Edward Rodgers, the Court will use Edward Rodger's first name throughout this opinion.

Plaintiff first filed a complaint against Defendants Cook County, Illinois, and the Sheriff of Cook County in the United States District Court on July 28, 2011. Plaintiff filed an amended complaint on June 18, 2012, and a second amended complaint on August 27, 2012. Both complaints were brought against the same Defendants. Concurrently, Plaintiff filed suit in the Circuit Court of Cook County against Cook County, Dr. Sunita Williamson, and Clifford Oliver. That suit was timely.

Defendant Cook County, the employer of Williamson and Oliver, urged the state court to dismiss the timely-filed state negligence action because the federal action "involves the same parties, the same factual allegations" as the state negligence action and "it would make sense for all those matters to be decide in one courtroom." Plaintiff argued against dismissal, pointing out that Williamson and Oliver were not parties in the federal action and that granting the motion would create statute-of-limitations problems. Defendants advanced the following argument in state court:

> The Federal Court, like Illinois, does recognize estoppel, so he can make an estoppel argument to bring them in down there. He can argue equitable tolling, those are things that can be raised if he wants to make that argument to bring in individuals in Federal Court, because he's filed here. So that by itself should not preclude the Court from exercising its discretion and dismissing this case here. The parties are identical because his avenue of recovery is specifically the County of Cook, which holds the purse strings for all of the defendants involved in that case. His theories of liability are included in all of the factual allegations in all three of the cases that he – complaints that he's brought here, the one in this Court and the two versions of the con – Federal complaint contain all the same factual allegations *** [s]ame nucleus of operative facts * * *.

The state court judge granted the motion to dismiss, and the same day, Plaintiff filed his motion for leave to file a third amended complaint before this Court, seeking to add two state law claims (medical malpractice and negligence) against two new defendants (Dr. Sunita Williamson and

3

Clifford Oliver). Plaintiff also filed a notice of appeal of the state court's decision to dismiss his state court lawsuit.

Despite Defendants' objections to the third amended complaint, the Court granted Plaintiff's motion, but noted that the filing of Plaintiff's third amended complaint in this Court alongside the pendency of Plaintiff's appeal of the dismissal of the state court case raised the specter of parallel state and federal court litigation should the state appellate court reverse the state trial court's dismissal order. The Court noted that, during a status hearing in February 2013, counsel for Plaintiff had reiterated that his client would prefer to litigate the claims that were dismissed by the state court judge in a state forum, which would be his right if the state appellate court ruled in his favor. Thus, the Court concluded that the interests of justice and comity would best be served by staying this matter until Plaintiff's state court appeal was resolved. See *Rogers v. Desiderio*, 58 F.3d 299, 302 (7th Cir. 1995).

On October 1, 2013, Plaintiff moved to vacate the stay in this matter, advising the Court that the pending state court appeal had been resolved. See *Rodgers v. Cook County*, 998 N.E.2d 164 (Ill. App. Ct. Sept. 30, 2013). On appeal, Plaintiff claimed that the circuit court improperly granted Defendants' motion to dismiss because the two lawsuits were against different defendants, and that discretionary factors concerning prejudice weighed in favor of keeping the state malpractice and negligence claims in state court. Specifically, Plaintiff argued that he would be unable to obtain complete relief if the state action was dismissed because the two-year statute of limitations could bar him from maintaining an action against Dr. Williamson and Oliver in federal court. 745 ILCS 10/8–101(b) (West 2008). In response, Defendants claimed that both the federal and state lawsuits involve the same cause of action, and that Plaintiff cannot bring two wrongful death claims at the same time. The Illinois Appellate Court reversed and

4

remanded with instructions to the trial court to stay the state proceedings until this Court decided the statute of limitations issue. On October 9, 2013, the Court granted Plaintiff's motion to vacate stay, and directed Defendants to respond to the third amended complaint. All four Defendants did so by moving to dismiss Plaintiff's complaint.

## II. Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss is not to decide the merits of the case; a Rule 12(b)(6) motion tests the sufficiency of the complaint. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss under Rule 12(b)(6), the Court takes as true all factual allegations in Plaintiff's complaint and draws all reasonable inferences in his favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original). The Court reads the complaint

and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *cf. Scott v. City of Chi.*, 195 F.3d 950, 952 (7th Cir. 1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole.").

## III.   Analysis

Plaintiff does not include any specific causes of action in his complaint. He merely states that he is asserting "federal and state law claims" against Sheriff Dart and Cook County and that Defendants Sunita Williamson and Clifford Oliver breached their duties to Plaintiff's decedent and were negligent. In his response brief, Plaintiff clarifies that he is not alleging any federal claims against Defendants Williamson or Oliver.

Sheriff Dart contends that the amended complaint falls short of stating a claim that there is an official policy or practice that would subject him to liability. Cook County contends that all of Plaintiff's claims are subsumed within *Parish v. Sheriff*, another case pending in this district, and that Plaintiff fails to allege state law respondeat superior claims. Cook County also raises various statutory immunities to Plaintiff's state law claims. Finally, the individual Defendants Williamson and Oliver raise, among other things, a statute of limitations defense.

### A.   Plaintiff's State Law Claims Against Defendants Williamson and Oliver

Defendants Williamson and Oliver argue that the claims against them, which were raised in this Court in October 2012 (over two years after the incident in question), are time-barred.[4] If Plaintiff had not successfully appealed the dismissal of his state court complaint, Plaintiff may have had a compelling argument for application of estoppel principles to get over any limitations hurdle; however, Plaintiff was successful on appeal and his state law claims against Defendants Williamson and Oliver have been resurrected. Thus, the Court will not consider the application

---

[4] The Court takes no position on the state-law limitations issues, which Defendants may raise before the state court if they so choose.

of equitable or judicial estoppel, which is a rare remedy. Instead, Plaintiff's claims may proceed against Defendants Williamson and Oliver in state court, where Plaintiff originally brought them and where he prefers to litigate them, as he indicated before this Court on October 2012 and by filing an appeal in state court. The claims against Oliver and Williamson in this federal action are dismissed.

        **B.**        **§ 1983 Claims Against Dart and Cook County**

42 U.S.C. § 1983 creates a cause of action against "[e]very person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." The statute is not "itself a source of substantive rights, but merely provides a means for vindicating federal rights elsewhere conferred," *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979)), such as in the Eighth and Fourteenth Amendments.

Under § 1983, there are two ways in which a party may sue an individual government actor: in the actor's official capacity or in his individual, or personal, capacity. See *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985). An individual capacity suit requires a showing of personal involvement by the government actor. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). By contrast, an official capacity suit is brought against a high-ranking official as a means of challenging an unconstitutional policy, practice, or custom. See *Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991). Official capacity suits are simply a way of pleading an action against an entity of which the officer is an agent. *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)); see also *Sanders*

*v. Sheahan*, 198 F.3d 626, 629 (7th Cir. 1999) ("A claim against a government employee acting in his official capacity is the same as a suit directed against the entity the official represents."). Plaintiff has brought suit against Cook County and Sheriff Dart in his official capacity. See, *e.g.*, *Carver v. Sheriff of LaSalle Cnty.*, 324 F.3d 947, 948 (7th Cir. 2003) (holding that "a county in Illinois is a necessary party in any suit seeking damages from an independently elected officer.").[5]

Municipal entities such as Cook County "may be liable for monetary damages under § 1983 if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell*, 436 U.S. at 690). Plaintiff complains about two express policies at Cook County Jail. First, Plaintiff alleges that Cook County Jail has a policy that prisoners at the jail may not receive any medication, including medication prescribed at Stroger Hospital, until the prisoner has been

---

[5] Illinois law establishes that the Sheriff is an "independently elected county officer and is not an employee of the county in which the sheriff serves." *Carver v. Sheriff of LaSalle County,* 787 N.E.2d 127, 136 (Ill. 2003) ("*Carver I*"). In *Carver v. Sheriff of LaSalle County,* 324 F.3d 947 (7th Cir. 2003) ("*Carver II*"), the Seventh Circuit held that 745 ILCS 10/9-102 required a county to pay for a judgment entered against the county sheriff in his official capacity. *Carver II,* 324 F.3d at 948. It is the responsibility of the Sheriff to appoint and hire deputies (55 ILCS 5/3-6008 (West 2000)), to act as custodian of the county courthouse and jail (55 ILCS 5/3-6017 (West 2000)), and to act as the county's supervisor of safety (55 ILCS 5/3-6035 (West 2000)). The Sheriff's office is financed by public funds, appropriated to that office by Cook County. See, *e.g.,* 55 ILCS 5/4-6003 (West 2000) (the county board "shall fix the compensation of sheriffs, with the amount of their necessary clerk hire, stationery, fuel, and other expenses"); 55 ILCS 5/5-1106 (West 2000) (county board obligated to "provide proper rooms and offices for the accommodation" of the sheriff, as well as "reasonable and necessary expenses for the use of the sheriff"). Thus, "a county in Illinois is a necessary party in any suit seeking damages from an independently elected county officer * * * [and][b]ecause state law requires the county to pay, federal law deems it an indispensable party to the litigation." *Carver II,* 324 F.3d at 948. Thus, in the present case, if Plaintiff's *Monell* claim survives, both the Sheriff and Cook County are necessary parties. See also *Askew v. Sheriff of Cook County, Ill.*, 568 F.3d 632, 636 (7th Cir. 2009).

examined by a physician at the jail. According to Plaintiff, this policy caused Edward Rodgers to be deprived of essential medication on August 3 and 4, 2010. Second, Plaintiff alleges that Cook County Jail has a policy of allowing unlicensed "psych workers," rather than a licensed mental health professional, to perform psychological evaluations, and that this policy was one of the causes of Edward Rodgers' death.

*Parish* is a lawsuit filed in 2007 by a former prisoner at Cook County Jail against Cook County and Sheriff Dart, alleging a systemic failure to provide persons entering the jail with previously prescribed prescription medication. The district judge assigned to the *Parish* matter found those allegations to be plausible and, on October 28, 2008, ordered that *Parish* would proceed as a class action for "all persons confined at the Cook County Jail on and after August 3, 2005 who provided notice that he or she had been taking prescription medication for a serious health need and who was not provided with appropriate medication within 24 hours thereafter."

Plaintiff maintains that Edward Rodgers was not injured by the policy at issue in *Parish*. According to Plaintiff, Edward Rodgers entered the jail and was taken to Stroger Hospital, where he received his medication. Thus, he received his medication within 24 hours of his detention. However, he did not receive his medication following his return to the jail on August 3 and 4. According to Plaintiff, this was not caused by the *Parish* policy, but rather was the product of the policy challenged in this case: that is, that prisoners at the jail may not receive any medication, including medication prescribed at Stroger Hospital, until the prisoner has been re-examined by a physician at Cook County Jail. Based on the limited record, the Court agrees with Plaintiff that this claim is not the same claim at issue in *Parish*. Furthermore, the second policy challenged by Plaintiff—that psychological evaluations are performed by unlicensed "psych workers"—is wholly separate from the claims in *Parish*. Plaintiff's allegations are sufficient to raise a

9

plausible claim as to the existence of a policy, practice, or custom that resulted in Defendants acting with deliberate indifference to Plaintiff's medical needs. Therefore, Plaintiff has stated a claim against Sheriff Dart and Cook County. If, on a more robust record, Defendants can show that the claim in this case is subsumed within *Parish*, the Court may revisit the issue.

## IV. Conclusion

Because Plaintiff's state law claims against Defendants Williamson and Oliver have been resurrected by the Illinois Appellate Court and are now pending (albeit stayed pending resolution of the statute-of-limitations issue in this case) in state court, the Court concludes that estoppel is not warranted in this case and that Plaintiff's state law claims should proceed in the jurisdiction in which he originally brought them. Therefore, the Court grants the motions to dismiss filed by Defendants Williamson and Oliver [62 and 64]. The Court denies Defendant Dart's motion to dismiss [60] and denies Defendant Cook County's motion to dismiss [68]. Given the sparse allegations of Plaintiff's third amended complaint, the Court cannot discern any stand-alone state law claims asserted against Cook County or Sheriff Dart. Thus, only Plaintiff's § 1983 claims against Cook County and Sheriff Dart in his official capacity remain pending in this case. This case is set for a status hearing on April 23, 2014, at 9:00 a.m.

Dated: March 25, 2014

_____
Robert M. Dow, Jr.
United States District Judge